ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**[1]

| | | |
|---|---|---|
| **MARIO EZEQUIEL FARRANDO** DEMANDANTE(S)-APELADA(S) V **DIEGO JACOBSON PERRY** DEMANDADA(S)-APELANTE(S) | **KLAN202500441** | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de **HUMACAO** Civil Núm.: **HU2020CV01091 (208)** Sobre: Cobro de Dinero Ordinario |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente.

## S E N T E N C I A

En San Juan, Puerto Rico, hoy día 26 de junio de 2026.

Comparece ante nos, el señor **DIEGO JACOBSON PERRY** (señor **JACOBSON PERRY**) mediante *Recurso de Apelación* interpuesto el 15 de mayo de 2025. En su escrito, nos solicita que revisemos de la *Sentencia* despachada el 25 de marzo de 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de Humacao.[2] Mediante la susodicha providencia, el tribunal apelado declaró con lugar la *Demanda* incoada el 12 de noviembre de 2020 por el señor **MARIO EZEQUIEL FARRANDO CIRIANO** (señor **FARRANDO CIRIANO**) y condenó al señor **JACOBSON PERRY** al pago del importe de $308,073.56, más la cuantía de $5,000.00 por concepto de temeridad desplegada.

---

[1] En conformidad con la *Orden Administrativa OAJP-2021-086* decretada el 4 de noviembre de 2021 sobre *Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones*.

[2] Dicho dictamen judicial fue notificado y archivado en autos el 26 de marzo de 2025. Apéndice del *Recurso de Apelación*, págs. 1-14.

Número Identificador:
SEN2026_____

- I -

El 12 de noviembre de 2020, el señor FARRANDO CIRIANO entabló una *Demanda* sobre cobro de dinero contra el señor JACOBSON PERRY.[3] Expuso que el 21 de abril de 2017, las partes rubricaron un *Contrato de Préstamo y Pagaré* en el cual el señor JACOBSON PERRY concordó sufragar el importe de $257,589.00.[4] Además, adujo que estipularon que, en la eventualidad de que el pasivo no fuera satisfecho totalmente en o antes del 1 de noviembre de 2017, se le computarían intereses al seis por ciento (6 %) sobre lo adeudado hasta finiquitarse. Acotó que el señor JACOBSON PERRY le debía $254,146.37; el adeudo estaba líquido, vencido y exigible; al igual que requirió la liquidación del desembolso, más los intereses legales.

El 23 de agosto de 2021, el señor JACOBSON PERRY presentó su *Contestación a Demanda* negando las alegaciones; conteniendo sus defensas afirmativas e incluyendo una *Reconvención*.[5] En la *Reconvención*, el señor JACOBSON PERRY arguyó que contrató los servicios del señor FARRANDO CIRIANO para realizar ciertas obras de construcción y de mejoras en su residencia; el señor FARRANDO CIRIANO ejecutó labores deficientes y usó productos de mala calidad; éste abandonó el proyecto sin completar las labores acordadas; y, como resultado, éste se vio obligado a incurrir en desembolsos sobrepasando los $100,000.00. Añadió que, por la relación de confianza habida entre ellos, le proveyó una tarjeta de crédito para la adquisición de los materiales y gastos relacionados a los trabajos, la cual se utilizó en exceso y para uso personal. Por lo anterior, imploró la reconciliación de la cuenta de los gastos.

Al día siguiente, el 24 de agosto de 2021, el señor FARRANDO CIRIANO presentó *Contestación a Reconvención*.[6] Planteó que tuvo que financiar las tareas del señor JACOBSON PERRY dado que éste carecía de liquidez para

---

[3] Apéndice del *Recurso de Apelación,* págs. 15-20.
[4] Apéndice del *Recurso de Apelación,* págs. 17-19.
[5] Apéndice del *Recurso de Apelación,* págs. 21-25.
[6] Apéndice del *Recurso de Apelación,* págs. 26-28.

cubrir las expensas. Enunció que, en múltiples ocasiones, le pidió efectuar un cuadre del dinero invertido en la edificación, sin embargo, el señor **JACOBSON PERRY** se limitó a *ofrecerle compensaciones adicionales* tan pronto tuviese liquidez económica.

Más adelante, el 3 de septiembre de 2021, el señor **FARRANDO CIRIANO** presentó su *Moción de Sentencia Sumaria* punteando que no había polémica alguna sobre la existencia y reconocimiento de la obligación.[7] Lo anterior, pues argumentó que el señor **JACOBSON PERRY** admitió y juró, ante un notario público, la deuda y los términos de retribución. Incluyó nueve (9) hechos que, según su criterio, no estaban en disputa. Exteriorizó que de los documentos se desprendía que el pasivo era determinado, válido y caducado por lo que, transcurrida la fecha pactada, podía exigir su cumplimiento.

El 25 de octubre de 2021, el señor **JACOBSON PERRY** replicó mediante una *Oposición a Moción de Sentencia Sumaria de la Parte Demandante*.[8] Dilucidó que existían serias controversias genuinas sobre hechos materiales que impedían la disposición sumaria del caso, por lo que procedía declararla no ha lugar.

Tiempo después, el 26 de mayo de 2022, el foro *a quo* dictaminó *Resolución* declarando no ha lugar la interpelación de sentencia sumaria presentada el 3 de septiembre de 2021 por el señor **FARRANDO CIRIANO**; formuló determinaciones de hechos y ordenó la continuación de los procedimientos.[9]

---

[7] Apéndice del *Recurso de Apelación*, págs. 29-59. Junto a su solicitación, el señor **FARRANDO CIRIANO** acompañó lo siguiente: (1) Comunicación escrita con fecha de 17 de noviembre de 2016 dirigida al señor **FARRANDO CIRIANO** por parte del señor **JACOBSON PERRY**; (2) Correos electrónicos fechados 16 de abril de 2017 entre los señores **FARRANDO CIRIANO** y **JACOBSON PERRY**; (3) *Contrato de Préstamo y Pagaré* de 21 de abril de 2017; (4) Correos electrónicos de los días 17 y 25 de mayo de 2017 entre los señores **FARRANDO CIRIANO** y **JACOBSON PERRY**; (5) Hoja Intereses según contrato; (6) *Declaración Jurada* firmada el 2 de septiembre de 2021 por el señor **FARRANDO CIRIANO**.

[8] Apéndice de la *Apelación*, págs. 60-99. El señor **JACOBSON PERRY** anejo: (1) *Contestación a Requerimiento de Admisiones* del señor **FARRANDO CIRIANO**; (2) *Declaración Jurada* signada el 25 de octubre de 2021 por el señor **JACOBSON PERRY**; (3) seis (6) Fotografías; (4) Correo electrónico de 7 de marzo de 2018; (5) Correo electrónico de 11 de junio de 2020; (5) Correo electrónico de 7 de agosto de 2018; (6) Correo electrónico de 30 de julio de 2020; (6) Payments Ferrando 2013-2016 ( dos páginas).

[9] Apéndice del *Recurso de Apelación*, págs. 100-107.

Más tarde, el 22 de mayo de 2023, el señor **JACOBSON PERRY** presentó una *Moción Solicitando Sentencia Sumaria Parcial*.[10] Elucidó que, culminado el descubrimiento de prueba, no surgía del expediente judicial pagaré alguno ni se produjo tal documento que evidenciara o comprobara lo alegadamente endeudado al señor **FARRANDO CIRIANO**. Precisó que es el señor **FARRANDO CIRIANO** quien le debe por razón del incumplimiento de los acuerdos concernientes a los proyectos y/o las deficiencias de estos.[11] Oportunamente, el 30 de mayo de 2023, el señor **FARRANDO CIRIANO** presentó su *Oposición a Solicitud de Sentencia Sumaria*.[12]

El día 17 de agosto de 2023, se pronunció *Resolución* declarando no ha lugar la *Moción Solicitando Sentencia Sumaria Parcial* presentada el 22 de mayo de 2023 por el señor **JACOBSON PERRY**. En su discernimiento, reiteró estas determinaciones de hechos:[13]

1. El 21 de abril de 2017, las partes otorgaron un contrato de préstamo y pagaré por la cantidad de $257,589.00 ante notario.
2. Conforme al contrato otorgado por las partes, los pagos serían efectuados de la siguiente forma:
   - el 1ro de junio de 2017 - $50,000.00
   - el 1ro de julio de 2017 - $50,000.00
   - el 1ro de agosto de 2017 - $50,000.00
   - el 1ro de septiembre de 2017 - $50,000.00
   - el 1ro de octubre de 2017 - $50,000.00
   - el 1ro de noviembre de 2017 - $50,589.00
3. Conforme al contrato otorgado por las partes, en caso de impago de la totalidad de la deuda el primero de noviembre de 2017 o antes, se computaría un interés al 6% de la cantidad adeudada hasta su saldo.
4. El 17 de noviembre de 2016, el demandado le cursó un correo electrónico al demandante confirmando el repago de una cantidad sin determinar.
5. Del expediente judicial no surge un pagaré a favor del demandante el señor Farrando.

---

[10] Apéndice del *Recurso de Apelación*, págs. 108-118. Juntó una *Declaración Jurada* firmada el 22 de mayo de 2023.

[11] Apéndice del *Recurso de Apelación*, pág. 111. El señor **JACOBSON PERRY** alude que el señor **FARRANDO CIRIANO** reconoció que recibió la cantidad de $51,317.37. Evaluada la evidencia disponible, sin el beneficio de la reconciliación solicitada, el señor **JACOBSON PERRY** ha sufragado abonos que ascienden a $348,020.13, ello incluyendo los $231,608.13 pagados desde el 2013 hasta 2016; y $116,412.00 desde el 2017.

[12] Apéndice del *Recurso de Apelación*, págs. 119-149. Unió la siguiente documentación: (1) Comunicación de 17 de noviembre de 2016 firmado por el señor **JACOBSON PERRY**; (2) Correos electrónicos de 16 de abril de 2017; (3) Correos electrónicos de 30 de marzo de 2021 y 21 de abril de 2017; (3) *Contrato de Préstamo y Pagaré*; (4) Correo electrónico de 25 de mayo de 2017; y, (5) *Declaración Jurada* suscrita el 30 de mayo de 2023 por el señor **FARRANDO CIRIANO**.

[13] Apéndice del *Recurso de Apelación*, págs. 150-158. Estas determinaciones de hechos están incluidas en la *Resolución* dispuesta el 26 de mayo de 2022.

Subsiguientemente, el 30 de agosto de 2023, el señor **JACOBSON PERRY** presentó *Moción Solicitando Determinaciones Adicionales de Hechos y Reconsideración de Resolución*.[14] En síntesis, ratificó sus alegatos en relación con que no constaba prueba alguna de la existencia del préstamo en el cual se predicaba la reclamación del señor **FARRANDO CIRIANO**, así como del alegado débito. El 14 de septiembre de 2023, el señor **FARRANDO CIRIANO** presentó una *Oposición a Solicitud de Determinaciones Adicionales de Hechos Reconsideración de Resolución*.[15] En vista de ello, el 15 de septiembre de 2023, se prescribió *Orden* declarando no ha lugar la súplica de reconsideración.[16]

El 27 de septiembre de 2023, el señor **JACOBSON PERRY** presentó una *Moción en Torno a Solicitud de Determinaciones Adicionales de Hechos*, ello dado que nada se dispuso sobre las determinaciones adicionales.[17] En respuesta, el 28 de septiembre de 2023, se expidió *Resolución* proveyendo no ha lugar a la reconsideración y las determinaciones adicionales de hechos.[18]

Ante esta situación, el 26 de octubre de 2023, el señor **JACOBSON PERRY** promovió ante este Tribunal de Apelaciones una *Petición de Certiorari* que recibió el alfanumérico: **KLCE202301184**.[19] El 3 de noviembre de 2023, el señor **FARRANDO CIRIANO** presentó su *Oposición a Petición de Certiorari*, y el 28 de noviembre de 2023, mediante *Resolución* denegamos la expedición del auto de *certiorari*.[20] En desacuerdo, el 14 de diciembre de 2023, el señor **JACOBSON PERRY** presentó *Moción de Reconsideración.* Eventualmente, el 12 de enero de 2024, expedimos *Resolución* disponiendo no ha lugar.[21]

---

[14] Apéndice del *Recurso de Apelación*, págs. 159-166.
[15] Apéndice del *Recurso de Apelación*, págs. 168-182.
[16] Apéndice del *Recurso de Apelación*, pág. 183.
[17] Apéndice del *Recurso de Apelación*, págs. 184-185.
[18] Apéndice del *Recurso de Apelación*, pág. 186.
[19] Apéndice del *Recurso de Apelación*, págs. 187-221.
[20] Apéndice del *Recurso de Apelación*, págs. 222-235.
[21] De dicha denegatoria, el 9 de febrero de 2024, el señor **JACOBSON PERRY** recurrió ante el Tribunal Supremo de Puerto Rico mediante *Petición de Certiorari*. El caso fue identificado con el número CC-2024-0065. El 1 de marzo de 2024, nuestro Más Alto Foro tramitó *Resolución* declarando no ha lugar la *Petición de Certiorari*. Ante la presentación de una segunda moción de reconsideración ante el Tribunal Supremo, el 10 de mayo de 2024 se promulgó *Resolución* declarando no ha lugar. Apéndice del *Recurso de Apelación*, págs. 247-268.

Cónsono con lo anterior, a nivel de instancia, se pautó juicio en su fondo para el 3 de diciembre de 2024. En la audiencia, ofrecieron sus testimonios: la licenciada Rita Molinelli Freytes, el señor **FARRANDO CIRIANO**, la señora Karim Jacobson y el señor **JACOBSON PERRY**.[22] Incluimos un resumen de las atestaciones brindadas ante el Tribunal de Primera Instancia, las cuales hemos examinado con sumo cuidado.

### Licenciada Rita Molinelli Freytes

La licenciada Molinelli Freytes declaró que es abogada y notario público desde el año 1997.[23] Narró que el 21 de abril de 2017, el señor **MARIO EZEQUIEL FARRANDO** y el señor **DIEGO JACOBSON PERRY** comparecieron personalmente ante ella para la firma de un documento.[24] Dio a conocer que previo a la firma del documento y en preparación del contrato a suscribir, recibe la información pertinente; habla por teléfono con las partes; y, finalmente, revisa el contrato, si hay enmiendas, se incorporan se firman frente a su persona.[25] Pormenorizó que la cantidad que establecía el documento como "Promesa del deudor a pagar" era de $257,589.00 y el deudor lo era el señor **JACOBSON PERRY**.[26] Aparte, que el interés establecido y pactado era de un seis por ciento (6%) si llegaba al día 1 de noviembre de 2017.[27] Repasó que el párrafo tres (3) contenía la información en relación a los pagos, a saber, que eran mensuales, en las siguientes fechas: 1 de junio de 2017, 1 de julio de 2017, 1 de agosto de 2017, 1 de septiembre de 2017, 1 de octubre de 2017 y un pago final el 1 de noviembre de 2017.[28] A preguntas de la representación legal del señor **FARRANDO CIRIANO**, comentó que el párrafo nueve (9) de la página tres del contrato contenía una disposición para la falta del pago a su vencimiento del principal e intereses.[29] De igual manera, leyó la disposición que surge de la página tres de cuatro (3/4), la cual consiste en el juramento de las partes en el documento.[30] En el contrainterrogatorio, la Lcda. Molinelli Freytes certificó que el documento llevaba como título "*Contrato de préstamo y Pagaré*".[31] Refrendó que no recordaba quién preparó el referido documento, si se lo habían enviado ya redactado o si lo había escrito el señor **FARRANDO CIRIANO**.[32] Convino que, a pesar de que el documento se intitula "*Contrato de Préstamo y Pagaré*", lo cierto es que no

---

[22] Apéndice del *Recurso de Apelación*, págs. 270-275. Se marcaron como *Exhibits* del señor **FARRANDO CIRIANO**, parte demandante, los siguientes: (1) *Contrato de Préstamo y Pagaré*; (2) Correo electrónico del 17 de noviembre de 2016; (3) Correo electrónico del 16 de abril de 2017; (4) Correo electrónico del 21 de abril de 2017; (5) Correo electrónico del 25 de mayo de 2017; (6) Cadena de correo electrónicos 2 de abril de 2017. Como *Exhibits* del señor **JACOBSON PERRY**, parte demandada, se marcaron: (1) Correo electrónico del 1 de enero de 2022 4:37 pm; (2) Correo electrónico del 1 de enero de 2022 4:38 pm; (3) Correo electrónico del 7 de marzo de 2018; (4 A y 4 B) fotos a color.
[23] Transcripción de la Prueba Oral (TPO), pág. 10, líneas 22-24; pág. 11, líneas 14-15.
[24] Transcripción de la Prueba Oral (TPO), pág. 20, líneas 11-18; pág. 22, líneas 15-24; pág. 23, líneas
[25] Transcripción de la Prueba Oral (TPO), pág. 23, líneas 1-7.
[26] Transcripción de la Prueba Oral (TPO), pág. 23, líneas 19-24; pág. 24, línea 1.
[27] Transcripción de la Prueba Oral (TPO), pág. 24, líneas 2-9.
[28] Transcripción de la Prueba Oral (TPO), pág. 24, líneas 10-18.
[29] Transcripción de la Prueba Oral (TPO), pág. 24, líneas 22-24; pág. 25, líneas 1-14.
[30] Transcripción de la Prueba Oral (TPO), pág. 26, líneas 21-24; pág. 27, líneas 1-4.
[31] Transcripción de la Prueba Oral (TPO), pág. 28, líneas 20-24.
[32] Transcripción de la Prueba Oral (TPO), pág. 29, líneas 1-5, 22-24; pág. 30, líneas 1-16.

hubo ningún *Pagaré* llamado de tal forma.[33] Sostuvo que, aun cuando los juramentos en los contratos se tienen por no puestos, se utilizó lo mismo que se incluye en una declaración jurada, y la información sobre su persona, a saber: número de licencia del Registro Único de Abogados, el teléfono, etc., constaban en manuscrito.[34] Sustentó que el documento que le fue presentado es el mismo que se firmó y es el contrato de préstamo suscrito, pues contenía las iniciales de los otorgantes, su rúbrica, sello notarial y su firma en la última página.[35] Aclaró que el primer contrato no estaba, no lo tenía, y no recordaba porque la primera página correspondía a un primer contrato y las demás a un segundo contrato.[36] Apuntaló que el contrato fue firmado en su oficina, pero que no recordaba la hora de la firma; tampoco cuando el señor JACOBSON PERRY llegó a la oficina o si el señor FARRANDO CIRIANO ya estaba en la oficina al momento de llegar el señor JACOBSON PERRY.[37] Particularizó que estaba segura de haber discutido el contrato previamente, pues no se firma un contrato sin ella estar relativamente segura de que las cláusulas son correctas; y, incluso, se leyó al momento de la firma.[38] A preguntas de la representación legal del señor JACOBSON PERRY, la licenciada Molinelli Freytes divulgó que la entrega del dinero no se efectuó en su presencia, ni en su oficina, pues se limitó a notarizar el documento solamente.[39]

### Sr. Mario Ezequiel Farrando Ciriano

El señor FARRANDO CIRIANO corroboró que el documento contenía su firma y se firmó frente a la notaria Molinelli Freytes; comparecieron el señor JACOBSON PERRY y él y el motivo era la falta del acuerdo por escrito.[40] Especificó que la cuantía que establecía el documento era de $257,589.00 y el señor JACOBSON PERRY no cumplió con los pagos en las fechas establecidas.[41] Punteó que el señor JACOBSON PERRY, luego de vencido el contrato y pagaré, realizó pagos mediante cheque ascendientes a $78,600.00 y la deuda en ese momento, con intereses, totalizaba $306,000.00.[42] Constató que los correos electrónicos que surgían de la evidencia correspondían a su persona y al del señor JACOBSON PERRY, en un intercambio de mensajes en relación al documento y la deuda.[43] Aseguró que el señor JACOBSON PERRY, en uno de los correos electrónicos, le indicó que no tenía reparo en firmar el pagaré.[44] Atestiguó que el documento original se firmó el 21 de abril de 2017.[45] En el contrainterrogatorio, el señor FARRANDO CIRIANO reveló que se dedicaba al turismo náutico con

---

[33] Transcripción de la Prueba Oral (TPO), pág. 30, líneas 17-24; pág. 31, líneas 1, 18-23; pág. 32, líneas 1-5.

[34] Transcripción de la Prueba Oral (TPO), pág. 32, líneas 16-24; pág. 33, líneas 1-24.

[35] Transcripción de la Prueba Oral (TPO), pág. 34, líneas 2-12; pág. 45, líneas 10-13.

[36] Transcripción de la Prueba Oral (TPO), pág. 34, líneas 20-24; pág. 35, líneas 1-18.

[37] Transcripción de la Prueba Oral (TPO), pág. 35, líneas 19-24; pág. 36, líneas 1-14.

[38] Transcripción de la Prueba Oral (TPO), pág. 36, líneas 22-24; pág. 37, líneas 1-23; pág. 38, líneas 1-4.

[39] Transcripción de la Prueba Oral (TPO), pág. 39, líneas 10-24; pág. 40, líneas 1-16

[40] Transcripción de la Prueba Oral (TPO), pág. 51, líneas 20-24; pág. 52, líneas 1-10.

[41] Transcripción de la Prueba Oral (TPO), pág. 54, líneas 4-14.

[42] Transcripción de la Prueba Oral (TPO), pág. 57, líneas 1-14; pág. 58, líneas 7-18; pág. 79, líneas 3-20; pág. 111, líneas 1-23.

[43] Transcripción de la Prueba Oral (TPO), pág. 60, líneas 2-19; pág. 62, líneas 9-24; pág. 63, líneas 1-13; pág. 64, líneas 12-24; pág. 65, líneas 5-10; pág. 66, líneas 5-24; pág. 67, líneas 1-7; pág. 70, líneas 1-11.

[44] Transcripción de la Prueba Oral (TPO), pág. 68, líneas 14-18; pág. 71, líneas 12-15.

[45] Transcripción de la Prueba Oral (TPO), pág. 74, líneas 5-24; pág. 75, línea 1.

su compañía Bellaventura del Caribe.[46] Explicó que no preparó el documento; ya estaba preparado desde hace meses, pues estaban buscando la forma de plasmar todo y se estaba trabajando el contenido del mismo; lo preparó un abogado que no fue la Lcda. Molinelli; y le fue enviado a la licenciada para que lo notarizara.[47] Contestó que al momento de la firma del documento no se entregó dinero alguno.[48] Por otra parte, añadió que se había redactado un primer documento pero como el señor **JACOBSON PERRY** cumplió lo acordado y no hizo falta notarizarlo.[49] Se mantuvo en su postura de que el señor **JACOBSON PERRY** no reconoció explícitamente la cantidad que reclama como deuda.[50] Comunicó que trabajó en el proyecto White Laser, emprendimiento del señor **JACOBSON PERRY**, desde el año 2014 al 2017, con un salario de $3,000.00 mensuales.[51]

### Sra. Karim Jacobson Flores

La señora Jacobson Flores testificó que es la esposa del señor **JACOBSON PERRY** y conocía al señor **FARRANDO CIRIANO** desde el año 2004 pues su esposo y el tenían una relación como hermanos de confianza.[52] Aludió que al inicio les hacía varios trabajos, entre ellos, un jardín japonés, la remodelación de varias residencias, y luego siguió ayudándolo con otros trabajos.[53] Al mismo tiempo, cuando necesitaba dinero para algún gasto o pago que realizaba, se reunían para realizar los pagos y reembolsos o ajustes correspondientes; y así era como siempre lo trabajaban.[54] Dijo que el señor **FARRANDO CIRIANO** debía entregarle a ella las facturas de los gastos para luego ajustar lo que se le debía, si algo; ello, por la relación de confianza habida.[55] Confirmó que nunca recibió dinero por parte del señor **FARRANDO CIRIANO**; y su esposo tampoco.[56] Afirmó que el 1ro de enero de 2022 preparó un documento que le fue enviado por correo electrónico al señor **FARRANDO CIRIANO** el cual contenía la fecha, los números de cheque y el nombre a quien iban dirigidos esos cheques respecto a la información de los pagos, la cual sacó de los estados de cuenta.[57] Detalló que la información contenida en el documento comienza desde el 7 de mayo de 2013 hasta el 23 de junio de 2016, toda vez que fue la fecha hasta que encontró los pagos; la suma de $260,103.13 y la de $118,412.00 son el total de los pagos que se le hicieron al señor **FARRANDO CIRIANO**, totalizando así una cantidad $378,520.13.[58] En relación al documento preparado por el señor

---

[46] Transcripción de la Prueba Oral (TPO), pág. 81, líneas 1-5; pág. 82, líneas 9-14.
[47] Transcripción de la Prueba Oral (TPO), pág. 84, líneas 21-24; pág. 86, líneas 5-24; pág. 88, líneas 7-24; pág. 89, líneas 1-15; pág. 102, líneas 19-22.
[48] Transcripción de la Prueba Oral (TPO), pág. 90, líneas 5-10.
[49] Transcripción de la Prueba Oral (TPO), pág. 91, líneas 1-20.
[50] Transcripción de la Prueba Oral (TPO), pág. 96, líneas 6-24; pág. 97, líneas 7-10; pág. 98, líneas 5-20.
[51] Transcripción de la Prueba Oral (TPO), pág. 100, líneas 7-24; pág. 101, líneas 1-12.
[52] Transcripción de la Prueba Oral (TPO), pág. 128, líneas 20-24; pág. 129, líneas 1-15.
[53] Transcripción de la Prueba Oral (TPO), pág. 130, líneas 1-13.
[54] Transcripción de la Prueba Oral (TPO), pág. 130, líneas 14-24.
[55] Transcripción de la Prueba Oral (TPO), pág. 131, líneas 8-15.
[56] Transcripción de la Prueba Oral (TPO), pág. 132, líneas 5-14.
[57] Transcripción de la Prueba Oral (TPO), pág. 135, líneas 15-24; pág. 136, líneas 1-18; pág. 163, líneas 9-23; pág. 166, líneas 5-9.
[58] Transcripción de la Prueba Oral (TPO), pág. 137, líneas 19-24; pág. 138, líneas 4-24; pág. 139, líneas 1-5; pág. 141, líneas 17-24; pág. 142, líneas 1-7.

FARRANDO CIRIANO, expresó que no reflejaba todos los pagos que ella y su esposo habían efectuado.[59] En el contrainterrogatorio, informó que no tenía evidencia del envío del documento al señor FARRANDO CIRIANO; no hay ningún correo electrónico presentado que conste que el señor JACOBSON PERRY pagó la suma de $160,108.13 o $118,000.00 al señor FARRANDO CIRIANO.[60] Fue cuestionada sobre el monto que el señor FARRANDO CIRIANO aceptó que realizó el señor JACOBSON PERRY por la cantidad de $78,000.00, a lo que contestó que esa era la alegación del señor FARRANDO CIRIANO.[61]

### Sr. Diego Jacobson Perry

El señor JACOBSON PERRY atestiguó que el señor FARRANDO CIRIANO era su buen amigo, como un hermano, y luego se convirtió en su mano derecha.[62] Destacó que cada mes o semana se reunía con su esposa y el señor FARRANDO CIRIANO para siempre estar claros de cuanto se gastaba en los proyectos y conciliar las cuentas.[63] Articuló que no tuvo problema con firmarle un pagaré porque si le debía algo, y al final de las conciliaciones le pagaría.[64] En relación al pagaré y/o contrato, manifestó que no recibió cantidad alguna por parte del señor FARRANDO CIRIANO; y, durante su relación con éste último, no recibió dinero en concepto de los proyectos que se estaban realizando.[65] Alegó que en ningún momento hubo un préstamo y nunca se firmó un pagaré.[66] Apuntó que participó de la creación del documento preparado por su esposa, pues la ayudó a conseguir la cuenta de banco para buscar los cheques cancelados y el análisis.[67] En el contrainterrogatorio, aseveró que no presentó evidencia sobre los desembolsos que se reclamaron en el documento creado por su esposa; reafirmó que el señor FARRANDO CIRIANO dijo en su testimonio que había hecho un pago de $78,000.00, pero que el alega que hizo un pago total de $118,412.[68] Convino que la diferencia entre ambas cantidades es de aproximadamente $39,000.00.[69] Desplegó que en el correo electrónico enviado el 16 de abril de 2017, le respondió al señor FARRANDO CIRIANO, no objetó la cantidad que estaba cobrándole, pues creía que iban a reconciliar.[70] Finalmente, reveló que en otro de los correos electrónicos le notificó al señor FARRANDO CIRIANO

---

[59] Transcripción de la Prueba Oral (TPO), pág. 143, líneas 15-24; pág. 144, líneas 5-7.
[60] Transcripción de la Prueba Oral (TPO), pág. 166, líneas 22-24; pág. 167, líneas 1-4; pág. 168, líneas 2-14; pág. 169, líneas 1-9; pág. 172, líneas 12-15; pág. 173, líneas 9-18; pág. 178, líneas 2-7.
[61] Transcripción de la Prueba Oral (TPO), pág. 170, líneas 19-24.
[62] Transcripción de la Prueba Oral (TPO), pág. 191, líneas 9-24; pág. 192, líneas 1-7; pág. 193, líneas 9-20.
[63] Transcripción de la Prueba Oral (TPO), pág. 194, líneas 3-14.
[64] Transcripción de la Prueba Oral (TPO), Transcripción de la Prueba Oral (TPO), pág. 195, líneas 21-24.
[65] Transcripción de la Prueba Oral (TPO), pág. 196, líneas 17-24.
[66] Transcripción de la Prueba Oral (TPO), pág. 197, líneas 8-18.
[67] Transcripción de la Prueba Oral (TPO), pág. 206, línea 24; pág. 207, líneas 1-13; pág. 208, líneas 13-24; pág. 217, líneas 20-24; pág. 218, líneas 1-4.
[68] Transcripción de la Prueba Oral (TPO), pág. 221, línea 9-23; pág. 222, líneas 1-2; pág. 223, líneas 1-16.
[69] Transcripción de la Prueba Oral (TPO), pág. 223, líneas 17-24.
[70] Transcripción de la Prueba Oral (TPO), pág. 231, líneas 1-24; pág. 232, líneas 1-9.

que recibiría una cantidad de aproximadamente $400,000.00, más no podía pagarle lo que le debía pero que luego saldaría todo.[71]

Finalizado el desfile de la prueba, el tribunal concedió el término de cincuenta (50) días a las partes para someter sus memorandos de derecho. En cumplimiento con la *Orden*, el 21 de enero de 2025, presentaron sus respectivos memorandos de derecho.[72]

Así las cosas, el 25 de marzo de 2025, se decidió la *Sentencia* apelada conteniendo las siguientes determinaciones de hechos:

1. El 21 de abril de 2017, las partes demandante y demandada firmaron y juraron frente a la Notario Público Rita Molinelli un documento titulado "Contrato de Préstamo y Pagaré". En dicho documento[,] la parte demandada se comprometió pagarle al demandante la suma de $257,589.00.

2. Conforme al contrato otorgado por las partes, los pagos serían efectuados de la siguiente forma:
   - el 1ro de junio de 2017          $50,000.
   - el 1ro de julio de 2017          $50,000.
   - el 1ro de agosto de 2017         $50,000.
   - el 1ro de septiembre de 2017     $50,000.
   - el 1ro de octubre de 2017        $50,000.
   - el 1ro de noviembre de 2017      $7,589.

3. Conforme al Contrato otorgado por las partes, en caso de impago de la totalidad de la deuda el 1ro de noviembre de 2017 o antes, se computaría un interés al 6% de la cantidad adeudada hasta su saldo.

4. De dicho Contrato de Préstamo surge que el demandado garantizó el pago del principal e intereses pactados con los beneficios a recibirse como resultado de la venta de la empresa del demandado, Bluewater Defense Inc.

5. Dicho Contrato cumple con todos los elementos necesarios que configuran uno válido conforme a la ley, a saber: (1) consentimiento de las partes; (2) objeto cierto; y (3) causa lícita.

6. La prueba testifical y documental admitida, a la cual este Tribunal le dio entera credibilidad surge que previo a la firma de dicho documento, ambas partes revisaron y discutieron el mismo ante la Notario Rita Molinelli.

7. La prueba testifical y documental admitida, a la cual este Tribunal le dio entera credibilidad surge que previo a su firma, ninguna de las partes mostró reparo alguno con el lenguaje incluido en el documento.

8. Del expediente judicial no surge un Pagaré a favor del demandante, el Sr. Farrando. Tampoco se evidenció entrega de cantidad de dinero alguno por parte del demandante al demandado Sr. Jacobson Perry.

9. Según se desprende del Contrato de Préstamo y Pagaré firmado y jurado por ambas partes ante Notario Público claramente existe un reconocimiento de deuda por parte del demandado.

---

[71] Transcripción de la Prueba Oral (TPO), pág. 234, líneas 11-21; pág. 235, líneas 10-24; pág. 236, líneas 1-7.
[72] Apéndice del *Recurso de Apelación*, págs. 276-289 y 290-307.

10. La prueba testifical y documental admitida surge que es un hecho irrefutable que el demandado previo a la firma del contrato le reconoció en múltiples ocasiones al demandante la deuda y expresó no tener reparo alguno en firmar un pagaré.

11. El 17 de noviembre de 2016, el demandado mediante comunicación electrónica confirmó tener una deuda con el demandante y adicionalmente reconoció el apoyo que el demandante le brindó en atender asuntos propios del demandante.

12. El 17 de noviembre de 2016, el demandado le cursó un correo electrónico al demandante confirmando el repago de una cantidad que no surge del documento.

13. El 16 de abril de 2017, el demandado mediante comunicación electrónica reconoció que le adeuda dinero al demandante e informó que no tiene problema en firmarle un pagaré.

14. El 21 de abril de 2017, el demandado mediante comunicación electrónica informó al demandante no tener problema en firmar un pagaré.

15. El 25 de mayo de 2017, el demandado mediante comunicación electrónica aceptó al demandante que no ha podido pagarle por falta de liquidez y se compromete a continuar buscando alternativas para cumplirle con lo adeudado.

16. El demandante reconoció en su testimonio que luego de haber firmado el Contrato de Préstamo y pagare, el demandado le ha pagado la cantidad de $78,661.00.

17. El [demandado] no produjo evidencia alguna de los pagos realizados al demandante.

18. Al 1 de diciembre de 2024, luego de computar los intereses pactados y los pagos realizados por el demandado, según testificó y admitió el demandante, la cantidad adeudada por el demandado asciende a $308,073.56.

Concluyó que no subsistía controversia alguna atañida a la existencia y reconocimiento por el señor **JACOBSON PERRY** de la deuda que implora el señor **FARRANDO CIRIANO**, puesto que admitió y juró, frente a la notario público, el alusivo débito de $257,589.00 y los términos de pago. Del mismo modo, clarificó que el señor **JACOBSON PERRY** en múltiples ocasiones reconoció por escrito la existencia de la deuda. Consiguientemente, ordenó el pago de $308,073.56, más $5,000.00 en concepto de honorarios por temeridad.

Posteriormente, el 10 de abril de 2025, el señor **JACOBSON PERRY** presentó *Moción Solicitando Reconsideración de Sentencia o en la Alternativa Solicitud de Conclusiones de Derecho y Determinaciones de Hechos Adicionales*.[73] Señaló que la única relación entre las partes lo fue la contratación para realizar ciertas obras de construcción, la cual fue llevada a cabo de manera informal en consideración a la relación personal y de amistad

---

[73] Apéndice del *Recurso de Apelación*, págs. 308-323.

previa. Su postura estaba predicada exclusivamente en la existencia de una relación acreedor-deudor evidenciada por un pagaré, del cual no surgía su existencia.

El 15 de abril de 2025, el señor **FARRANDO CIRIANO** presentó *Oposición a Solicitud de Reconsideración de Sentencia o en la Alternativa Solicitud de Conclusiones de Derecho y Determinaciones de Hechos Adicionales*.[74] En apretada síntesis, propuso que el contrato suscrito goza de una presunción de validez; todo intento de anularlo por alegados vicios del consentimiento tiene que probarse; y, el señor **JACOBSON PERRY** no logró acreditar ninguno de dichos elementos. El 15 de abril de 2025, notificada el 16 de abril de 2025, mediante *Orden* se proveyó no ha lugar el petitorio de reconsideración presentado por el señor **JACOBSON PERRY**.[75]

Inconforme, el 15 de mayo de 2025, el señor **JACOBSON PERRY** acudió ante este Tribunal de Apelaciones mediante *Recurso de Apelación* señalando el(los) siguiente(s) error(es):

> Erró el TPI al determinar que la deuda reclamada en la Demanda es correcta, está vencida, es líquida y exigible, concediendo validez a un contrato que es nulo de acuerdo a la evidencia presentada y a pesar de concluir que del expediente judicial no surge un Pagaré a favor del demandante ni que se evidenció entrega de cantidad de dinero alguno por parte del demandante al demandado Sr. Jacobson Perry.
>
> Erró el TPI al conceder entera credibilidad al testimonio del demandante a pesar de sus inconsistencias con la evidencia no controvertida presentada y al no conceder credibilidad ni peso al testimonio de la parte demandada a pesar de no ser controvertido.
>
> Erró el TPI al determinar en su Sentencia que el demandado Jacobson actuó temerariamente y que obligó al Apelado a incurrir en gastos legales que resultaban innecesarios.
>
> Erró el TPI al desestimar la Reconvención sin formular fundamentos para ello a pesar de la evidencia no controvertida presentada por el demandado.

El 22 de mayo de 2025, intimamos *Resolución* reglamentando los procedimientos para encauzar la reproducción de la prueba oral y concediendo plazos de treinta (30) días para presentar sus alegatos. El 5 de

---

[74] Apéndice del *Recurso de Apelación*, págs. 324-333.
[75] Apéndice del *Recurso de Apelación*, pág. 334.

junio de 2025, proferimos *Resolución* acogiendo la transcripción de la prueba oral. Mas adelante, el 17 de junio de 2025, el señor **FARRANDO CIRIANO** presentó su *Alegato de la Apelada*.

Evaluado concienzudamente el expediente del caso; contando con el beneficio de la comparecencia de las partes; y habiendo examinado minuciosamente la transcripción de la prueba oral estipulada, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

- II -

*- A - CONTRATOS*

En Puerto Rico, rige el principio de la *libertad de contratación*. Mediante esta máxima del derecho, las partes contratantes se obligan a todos los extremos de lo pactado, las cláusulas y las condiciones que tengan por conveniente, siempre y cuando sean conformes a la ley, a la moral y al orden público.[76]

Los *contratos* son negocios jurídicos y fuente de obligación.[77] Por esta razón, un *contrato* existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.[78] Empero, para que un *contrato* se origine deben concurrir los siguientes requisitos: (i) *consentimiento* de los contratantes; (ii) *objeto* cierto que sea materia del contrato; y (iii) *causa* de la obligación que se establezca.[79] Una vez concurran las condiciones esenciales para su validez, los *contratos* serán obligatorios para las partes.[80] A su vez, "los contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez".[81] Lo cual

---

[76] Por tratarse de hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020 (Ley Núm. 55 de 1 de enero de 2020), nos limitaremos a discutir las disposiciones aplicables y correspondientes al Código Civil de Puerto Rico de 1930. Art. 1207 del Código Civil de 1930, 31 LPRA § 3372. *Feliciano v. Luxury Hotels Int'l.*, 210 DPR 712 (2022); *Demeter Int´l v. Srio. Hacienda*, 199 DPR 706 (2018).

[77] *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000).

[78] Art. 1206 del Código Civil de 1930, 31 LPRA § 3371.

[79] Art. 1213 del Código Civil de 1930, 31 LPRA § 3391.

[80] Art. 1230 del Código Civil de 1930, 31 LPRA § 3451.

[81] Art. 1230 del Código Civil de 1930, 31 LPRA § 3451.

implica que perfeccionado un *contrato* por el mero consentimiento, las partes están obligadas por lo expresamente convenido, así como a todas las consecuencias que según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[82] Si alguno de los contratantes incurre en dolo, negligencia o morosidad en el cumplimiento de sus obligaciones, responderá por los daños y perjuicios causados.[83]

El *consentimiento* en los *contratos* se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la *causa* que constituya el objeto del acuerdo.[84] No obstante, la validez y el cumplimiento de la contratación no puede dejarse al arbitrio de una de las partes.[85]

El Código Civil de Puerto Rico de 1930 principia que, si los términos de un *contrato* son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.[86] De manera opuesta, si las palabras parecieran contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.[87] Así que, las cláusulas de los *contratos* deberán interpretarse las unas con las otras, atribuyéndole a las dudosas el sentido que resulte del conjunto de todas.[88] Nuestro Tribunal Supremo ha solventado que al igual que en el caso de un estatuto, los términos de un *contrato* deben leerse conjuntamente y armonizarse para determinar la verdadera intención de las partes.[89] Se estiman como términos claros "aquellos que por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones, y sin necesitar para su compresión [de] razonamientos o demostraciones susceptibles de impugnación".[90]

---

[82] Arts. 1210 del Código Civil de 1930, 31 LPRA § 3375.
[83] Art. 1054 del Código Civil de 1930, 31 LPRA § 3018.
[84] Art. 1214 del Código Civil de 1930, 31 LPRA § 3401.
[85] Art. 1208 del Código Civil de 1930, 31 LPRA § 3373.
[86] Art. 1233 del Código Civil de 1930, 31 LPRA § 3471.
[87] *Íd.*
[88] Art. 1237 del Código Civil de 1930, 31 LPRA § 3475.
[89] *Caballero v. Kogan*, 73 DPR 666, 674 (1952).
[90] *Sucn. Ramírez v. Tribl. Superior*, 81 DPR 357, 361 (1959).

En cambio, si el texto del *contrato* no permite la compresión única de lo convenido es necesario recurrir a las pautas de interpretación que ofrecen el Código Civil de Puerto Rico y la jurisprudencia. En definitiva, la intención de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales.[91] La intención puede demostrarse por cualquier medio, y el juzgador deberá examinar todas las circunstancias concurrentes al otorgamiento del *contrato* para adjudicar la intención de las partes, incluyendo los actos anteriores, coetáneos y posteriores.[92] Es preciso aludir que los tribunales tienen la facultad y el deber de velar por el cumplimiento de los *contratos*. Por ello, no debemos relevar a una parte del cumplimiento de su obligación contractual cuando el *contrato* sea legal, válido y no contenga vicio alguno.[93]

### - B - *LOS HONORARIOS Y LA TEMERIDAD*

La Regla 44.1 (d) de las de Procedimiento Civil de 2009 especifica:

(d) Honorarios de Abogado - En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

Dicho eso, cuando una parte, o su representación legal, haya procedido de manera *temeraria* en la correcta tramitación de un pleito, el tribunal deberá imponerle, en la sentencia que formule, la obligación de satisfacer el pago de una suma por concepto de *honorarios de abogado*.[94] Acorde con la hermenéutica, la *temeridad* constituye aquel **patrón de conducta** que lleva a una de las partes a incurrir en los gastos de un litigio cuya controversia pudo haberse resuelto fuera de los tribunales.[95]

---

[91] *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 69 (1983).
[92] Art. 1234 del Código Civil de 1930, 31 LPRA § 3472.
[93] *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).
[94] 32 LPRA Ap. V, R. 44.1 (d); *Torres Montalvo v. Gobernador ELA*, 194 DPR 760 (2016).
[95] *Blás v. Hosp. Guadalupe*, 146 DPR 267 (1998); *Torres Ortiz v. E.L.A.*, 136 DPR 556 (1994); *Elba A.B.M. v. U.P.R.*, 125 DPR 294 (1990). (énfasis nuestro).

Por ende, una parte incide en *temeridad* cuando esté presente alguno de estos escenarios: (1) contestar una demanda y negar responsabilidad total; (2) defenderse injustificadamente de la acción en su contra; (3) creer que la cantidad reclamada es exagerada y tal sea el único motivo por el cual se opone a las alegaciones de la parte demandante, pudiendo limitar la controversia a la fijación de la correspondiente cuantía; (4) incurrir en un litigio del cual *prima facie* se desprende su responsabilidad y; (5) negar un hecho cuya veracidad conste.[96]

Así pues, una vez un tribunal con competencia concreta que se ha incurrido en *temeridad,* está llamado a imponer, a la parte que así haya actuado, el pago de cierta cantidad de dinero en concepto de *honorarios de abogado*.[97] La antedicha norma preceptúa en nuestro ordenamiento jurídico procesal la intención de "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito."[98]

De este modo, **el juzgador tendrá que adjudicar el monto correspondiente al grado de *temeridad* desplegado por el actor**, **ello mediante el ejercicio de su sano juicio**.[99] Esto quiere decir que, la decisión que en su día emita sólo será objeto de revisión si ha mediado abuso de discreción en el ejercicio de su ministerio.[100] En ese contexto, la doctrina vigente reconoce que un tribunal incurre "en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable".[101]

---

[96] *Blas v. Hosp. Guadalupe, supra*; *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713 (1987).
[97] *Torres Montalvo v. Gobernador ELA, supra*, pág. 779.
[98] *Íd.*, pág. 778, citando a *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010); *Blás v. Hosp. Guadalupe, supra*, a la pág. 335.
[99] (énfasis nuestro).
[100] *Colón Santos v. Coop. Seg. Múlt. P.R.*, 173 DPR 170 (2008); *Blás v. Hosp. Guadalupe, supra*; *Fernández v. San Juan Cement Co., supra*.
[101] *Citibank et al v. ACBI et al.*, 200 DPR 724, 736 (2018).

## - C - *Apreciación de la Prueba Temeridad*

En nuestra normativa jurídica, es un principio firmemente instituido que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendremos con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el foro de instancia.[102] Tal deferencia descansa en que el o la juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y la totalidad de su comportamiento mientras declaran (demeanor). Los mencionados factores son los que van formando gradualmente la convicción del juzgador sobre la verdad de lo declarado.[103]

La Regla 42.2 de las de Procedimiento Civil de 2009, resume los principios jurisprudenciales antes expuestos y codifica el alcance de la revisión judicial de la apreciación de la prueba desfilada ante el foro apelado. En lo pertinente, dispone que:

> [...]
> Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.[104]
> [...]

Esta Regla se contrapone a la también reconocida pauta de que el arbitrio del juzgador de hechos, aunque respetable, no es absoluto. Por lo cual, una apreciación errónea de la prueba desfilada en primera instancia no tiene credenciales de inmunidad frente a la función revisora de los tribunales.[105] Por ese motivo, los foros apelativos podemos intervenir con la *apreciación de la prueba* testifical que haga el juzgador de los hechos cuando este actúe con pasión, prejuicio o parcialidad, o incurra en un error manifiesto al aquilatarla.[106]

---

[102] *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009).
[103] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67-68 (2009).
[104] 32 LPRA. Ap. V, R. 42.2.
[105] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194 (2021); *Ramos Acosta v. Caparra Dairy Inc.*, 113 DPR 357, 365 (1982); *Vda. de Morales v. De Jesús Toro*, 107 DPR 826, 829 (1978).
[106] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013).

Finalmente, ante la prueba pericial y documental, es axioma judicial que el foro intermedio se encuentra en igual posición que el foro recurrido y, de manera que, está facultado para apreciar la prueba apoyándose en su propio criterio.[107] En virtud de lo cual, los foros apelativos no estamos obligados a seguir necesariamente la opinión de un perito, aunque sea técnicamente correcta.[108]

### – D – *COBRO DE DINERO*

La parte promovente de una acción judicial sobre *cobro de dinero*, debe probar que existe una deuda válida, que no se ha pagado, es acreedora de la misma y, la persona o entidad demandada es su deudora.[109] De esta manera, debe demostrar que la deuda que reclama es líquida, vencida y exigible.[110] Una deuda se considera líquida cuando la cuantía de dinero debida es cierta y determinada.[111] Por otro lado, se considera que la deuda es exigible cuando está vencida y, por consiguiente, puede demandarse el cumplimiento de la misma.[112]

### - III -

En su primer, segundo y cuarto señalamiento de error, el señor **JACOBSON PERRY** cuestiona al foro primario por decidir que: la deuda estaba vencida, líquida y exigible, concediendo validez a un contrato que es alegadamente nulo, pues no surgía un pagaré a favor del señor **FARRANDO CIRIANO**; al conceder entera credibilidad al testimonio del señor **FARRANDO CIRIANO** pese a las inconsistencias de su evidencia; y desestimar la *Reconvención* sin formular fundamentos para ello, a pesar de la evidencia no controvertida presentada por el señor **JACOBSON PERRY.**

---

[107] *Dye–Tex PR, Inc. v. Royal Ins. Co.*, P.R., 150 DPR 658 (2000).

[108] *Díaz v. Pneumatics & Hydraulics*, 169 DPR 273 (2006).

[109] *General Electric v. Concessionaries, Inc.*, 118 DPR 32, 43 (1986).

[110] *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 900 (1993).

[111] *Ramos y otros v. Colón y otros, supra,* citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168; *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965).

[112] *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021) citando a *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

Por su parte, el señor **FARRANDO CIRIANO** subrayó que el tribunal de instancia actuó correctamente dado que la prueba apunta a la existencia indiscutible de un acuerdo firmado por ambas partes y se concertó el pago de los $257,589.00 mediante plazos preacordados quedando pendiente $254,146.37. Por tanto, a satisfacción del foro primario se demostró la deuda vencida, líquida y exigible; y la actuación temeraria del señor **JACOBSON PERRY**.

Es decir, el día 21 de abril de 2017, los señores **FARRANDO CIRIANO** y **JACOBSON PERRY** suscribieron un *Contrato de Préstamo y Pagaré* ante la notaria Molinelli Freytes. De los testimonios ofrecidos en el juicio, tanto del señor **FARRANDO CIRIANO** como de la notaria Molinelli Freytes, emerge que el instrumento fue discutido previo a que todas las partes plasmaran su firma.[113] Por tal motivo, es determinante reiterar que la documentación en polémica cumple con todos los elementos necesarios que configuran un contrato válido conforme a la ley, estos son: (1) consentimiento de las partes; (2) objeto cierto; y, (3) causa lícita.

El señor **FARRANDO CIRIANO**, en su atestación, exteriorizó que el importe inicial era $257,589.00 y, al momento de interponer la *Demanda*, el señor **JACOBSON PERRY** le adeudaba $254.146.37. Esbozó que, dentro del término de vigencia del contrato, 21 de abril de 2017 a 1 de noviembre de 2017, éste no realizó ninguno de los pagos acordados. Aun así, reconoció y aceptó que el señor **JACOBSON PERRY** sí efectuó un pago por la cantidad de $78,661.00 que fue debidamente acreditado a la deuda.

En su testificación, el señor **JACOBSON PERRY** admitió y confirmó que hizo el pago de $78,661.00. Igualmente, destacó que, en adición, procedió a entregar ciertos pagos, algunos en cheque y otros en efectivo, al señor

---

[113] La notaria Molinelli Freytes afianzó que estaba segura de haber dialogado sobre el contrato previamente, pues no se firma un contrato sin ella estar relativamente segura de que las cláusulas son correctas; y que, incluso, se leyó al momento de la firma. Transcripción de la Prueba Oral (TPO), pág. 23, líneas 1-7; pág. 36, líneas 22-24; pág. 37, líneas 1-23; pág. 38, líneas 1-4. Asimismo, el señor **FARRANDO CIRIANO** detalló que el documento se firmó ante la notaria y que fue discutido previo a la firma. Transcripción de la Prueba Oral (TPO), pág. 51, líneas 20-24; pág. 52, líneas 1-10.

FARRANDO CIRIANO.[114] No mostró recibo, fotografía o documento alguno que comprobara que, verdaderamente, los pagos fueron efectuados. El señor JACOBSON PERRY circunscribió a basar su contención en un pliego preparado por la señora Jacobson Flores, su esposa; y del cual fue partícipe en su elaboración, el cual contenía un desglose de los alegados desembolsos, con fecha y cantidad - unos con indicación de fechas de correos electrónicos-, y de los cuales no constaba su certeza. El señor JACOBSON PERRY en diversas instancias, con anterioridad a la firma del *Contrato*, asintió por correo electrónico que existía un débito; estaba dispuesto a pagar; y, estaba en espera de recibir haberes por la venta de algunos negocios para poder cumplir con su compromiso. Consideramos imperativo hacer referencia a los correos electrónicos admitidos como evidencia:

- 17 de noviembre de 2016: el señor JACOBSON PERRY envió un correo electrónico al señor FARRANDO CIRIANO en el cual confirmaba el repago de los importes adeudados, las opciones ofrecidos y reconoció que lo ayudó con su crédito.[115]
- 2 de abril de 2017: mediante correo electrónico, el señor JACOBSON PERRY le ofreció al señor FARRANDO CIRIANO un adelanto de $15,000.00 con la ayuda de un socio llamado Waldemar. El señor FARRANDO CIRIANO no estuvo de acuerdo en utilizar a uno de sus recursos para resolver los problemas del señor JACOBSON PERRY.[116]
- 16 de abril de 2017: el señor FARRANDO CIRIANO cursó un correo electrónico en el cual le solicitó el pago de la deuda al señor JACOBSON PERRY e le informó su intención de preparar un pagaré ante notario. El señor JACOBSON PERRY respondió que no tenía problema con la firma del pagaré.[117]

---

[114] El señor JACOBSON PERRY en su *Contestación a Demanda* **acepta** que con fecha de 21 de abril de 2017 las partes suscribieron un documento titulado contrato de préstamo y pagaré ante notario público y que, entre otras cosas, el documento indica que éste habría de pagarle al señor FARRANDO CIRIANO la cantidad de $257,589.00. Este hecho admitido por el señor JACOBSON PERRY implica que reconoce la existencia de su obligación de pago y ello equivale *de facto* a un reconocimiento de la deuda.

[115] Apéndice del *Recurso de Apelación*, págs. 587-589. El contenido del correo electrónico es el siguiente:
"Baji...Esto es **confirmando lo que hablamos del repago de las cantidades que te debo** y el reconocimiento de tu apoyo durante esos últimos a[ñ]os. [...] Me **ayudaste con tu crédito**, esfuerzo y amistad. [...] No tengo claro las cantidades, por eso te lo pedí, pero el bosquejo de lo que te prometí es esto:
  1. **Te voy a repagar todo lo que te debo** de cualquier de las siguientes fuentes:
    - Venta de mi equity...[...] **De esas ventas sacaré el repago de nuestras deudas**.[...]"

[116] Apéndice del *Recurso de Apelación*, pág. 599. El contenido del correo electrónico es el siguiente: "Hola baji. [S]e me ocurre [una] forma de ASEGURAR cash rápido para tener tu necesidad de inmediato. Se me ocurre hablar con wally y explicarle donde yo estoy con BWD (recompra inmediato) y proponerle **que nos/te ayude adelantando $15K contra la recompra para ti**".

[117] Apéndice del *Recurso de Apelación*, págs. 591-592. El correo electrónico articula: "Como te comenté en el email anterior fui al abogado para documentar la deuda. El documento apropiado es hacer un Pagaré, que lo haremos notarizar."[...] "Baji. Estoy **tratando de resolver la situación financiera nuestra**, de WG y la mía personal con todo a mi

- 21 de abril de 2017: el señor **FARRANDO CIRIANO** le remitió un correo electrónico al señor **JACOBSON PERRY** anejando el Pagaré y le indagó si le parecía bien firmarlo ese día al medio día.[118]
- 25 de mayo de 2017: ante el requerimiento del pago de lo adeudado, por correo electrónico, el señor **JACOBSON PERRY** le expresó al señor **FARRANDO CIRIANO** que la falta de pago era por no tener "cash".[119]

Discurrimos, tanto de la evidencia documental como la testimonial, que lo plasmado en el *Contrato de Préstamo y Pagaré* es una obligación líquida, vencida y exigible; por ello, procede la remuneración al señor **FARRANDO CIRIANO**. En otras palabras: (1) el 21 de abril de 2017, los señores **FARRANDO CIRIANO** y **JACOBSON PERRY** convinieron un *Contrato de Préstamo y Pagaré*; (2) en la misma fecha, se pactó como se efectuarían los reembolsos; (3) en caso de impago, se computaría un interés al 6% de la cantidad adeudada hasta su saldo; (4) el señor **JACOBSON PERRY** cumplió con abonar la cantidad de $78,661.00, ello, fuera del término en el cual se comprometió a saldar; (5) al momento de instar la *Demanda,* el pasivo ascendía a $254,146.37; (6) el monto reclamado por el señor **FARRANDO CIRIANO** no fue controvertido con prueba fehaciente; (7) en varias ocasiones, la liquidación fue reconocida por el señor **JACOBSON PERRY**; y (8) el señor **JACOBSON PERRY** no probó que hubo error alguno al momento de la firma del *Contrato de Préstamo y Pagaré.*

En definitiva, colegimos que el Tribunal de Primera Instancia no erró ni abusó de discreción al declarar ha lugar la *Demanda* y desestimar la *Reconvención* presentada por el señor **JACOBSON PERRY,** dado que su determinación es esencialmente correcta y encontró fundamento en los

---

disposición. [...] Mientras tanto, yo no tengo cash.[...] **No tengo problema en firmarte un pagaré**".

[118] Apéndice del *Recurso de Apelación*, pág. 594. El contenido del correo electrónico es el siguiente: "Buenos días que estés muy bien, adjunto [documento} Pagar[é]. Si te parece bien, lo firmamos hoy ahí en palmas." [...] "Baji. [C]omo te dije, **no tengo problema en firmarte un pagaré**, pero los re-pagos acá no se si funcionan".

[119] Apéndice del *Recurso de Apelación*, pág. 596-597. El contenido del correo electrónico es el siguiente: "Hoja Baji. **Si no te he podido pagar, no es por falta de respeto, ni falta de reflexión, ni porque no quiero, es porque no tengo cash**. La solución más real y contundente que tengo **para resolver tus pagos**, los de Leo, mi familia, empleados de WG, y deudores de WG, es la venta de mis acciones de BWD...Por el otro lado, [traté] de conseguir un préstamo personal de la cooperativa [para] atender lo básico de WG **y tus pagos**, pero me lo denegaron porque mi crédito está afectado hoy día por no poder cobrar salario de WG. [...] Estos no son tus problemas, son mías exclusivamente. Lamento muchísimo que vos estás afectado por mi situación. Si hay [una] de mis deudas que me harían aceptar un deal de BWD que no me convenga, **sería la deuda que tengo contigo**".

documentos que obran en el expediente judicial. En consecuencia, no incidió en estos errores.

En su tercer señalamiento de error, elucida que se determinó que el señor **JACOBSON PERRY** actuó temerariamente y obligó al señor **FARRANDO CIRIANO** incurrir en gastos legales que resultaban innecesarios.

Un litigante actúa con *temeridad* cuando con terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito.[120] La *temeridad* "es improcedente en aquellos litigios que encierran planteamientos complejos y novedosos aun no resueltos en nuestra jurisdicción, así como cuando la parte concernida responde a lo que resulta ser una apreciación errónea del derecho".[121] Ello implica que no se actúa con temeridad cuando se poseen argumentos para rebatir lo que sostiene la parte contraria.[122]

Nuestro Foro Máximo ha dicho que "si en la discreción del tribunal de instancia se determina que hubo temeridad [...] es mandatorio imponer honorarios", pero que "se intervendrá con dicha determinación si media un claro abuso de esa discreción".[123] "El propósito de los *honorarios de abogado* es sancionar al litigante perdidoso que[,] por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, los gastos, el trabajo y las inconveniencias de un pleito".[124] Por tanto, la evaluación de si ha mediado o no temeridad recae sobre la sana discreción del tribunal sentenciador y solo se intervendrá con ella en casos en que ese foro haya abusado de tal facultad.[125] En este caso, no encontramos que el(la) juzgador

---

[120] R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, 6ta Edición, San Juan, Lexis Nexis, 2017, pág. 436.
[121] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013) (citas omitidas).
[122] *Méndez v. Morales*, 142 DPR 26, 40 (1996).
[123] *Meléndez Vega v. El Vocero de PR, supra*, pág. 211.
[124] *Méndez v. Morales, supra*, pág. 40.
[125] *Maderas Tratadas Inc. v. Sun Alliance Insurance*, 185 DPR 880, 926 (2012).

se haya excedido de los lindes de su discreción. Por eso, concretamos que no se incurrió en el tercer error.

- IV -

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* pronunciada el 25 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Humacao.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones